FILED Page 1 of 25
IN CLERKS OFFICE

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS** 2022 AUG 23 PH 3: 13

U.S. DISTRICT COURT
DISTRICT OF MASS,

JOHN PAUL BEAUDOIN,   SR.,                )
                                          )
                                          )
                Plaintiff,                )
                                          )       Civil Action No.
        v.                                )
                                          )
CHARLES D. BAKER, individually and in     )
his Official Capacity as Governor of the  )
Commonwealth of Massachusetts,            )
MARGARET R. COOKE, individually and       )
in her Official Capacity as Commissioner  )
of the Department of Public Health of     )
the Commonwealth of Massachusetts,        )
MINDY HULL, individually and in her       )
Official Capacity as Chief Medical        )
Examiner of the Commonwealth of           )
Massachusetts,                            )
JANICE Y. GRIVETTI, MICHELE N.            )
MATTHEWS, ROBERT M. WELTON, and           )
JULIE HULL, individually and in their     )
Official Capacities as Medical Examiners  )
in the Commonwealth of Massachusetts,     )
                                          )
                Defendants.               )
                                          )

## COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, AND OTHER DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

This Complaint is a request for injunctive relief where the source of fraudulent misrepresentation, purposely conducted, continues to harm both Plaintiff and the public. As a matter of equity, third party liability should be considered. In fairness and equity, the harm must

cease forthwith; and the Court has the discretion to do so pre, pending, and post-investigation of the fraud claims herein.

Relying on false information obtained through the Centers for Disease Control and Prevention ("CDC") and U.S. Food and Drug Administration ("FDA"), sourced, in part, from Massachusetts Department of Public Health ("MA DPH"), Massachusetts School of Law ("MSLaw') instituted a COVID-19 vaccination mandate for all students and staff. Plaintiff, a rising second-year law student, refused the vaccination because he has four pre-existing health issues consistent with thousands of COVID-19 vaccine injuries reported to VAERS even as of April 2021. Moreover, the Plaintiff's sincerely held religious beliefs prompted him to apply for a religious exemption offered by MSLaw. MSLaw never apprised the Plaintiff of the status of his application for a religious exemption. Rather, the only "status" that the School acted on was the Plaintiff's student status, which the School unilaterally, capriciously, and arbitrarily changed to "unenrolled."

Although Plaintiff is pursuing a remedy at law against MSLaw for pecuniary damages, there is no remedy at law that can undo MSLaw's injurious acts against Plaintiff especially in consideration of its reliance on CDC and FDA misinformation; nor is there a remedy at law, sans the relief sought in this Complaint, that will prevent another law school from exacting the same or similar vaccination requirements on Plaintiff. Most, if not all, law schools require COVID-19 vaccination and do so based on the fraudulent misinformation issued by the CDC and FDA and sourced, in part, from MA DPH. Plaintiff is injured in being deprived of a legal education ...ered to all those who assume the risk of COVID-19 vaccination. This coercion, again, is

based on fraudulent misinformation originated at MA DPH and disseminated by the CDC and FDA to law schools *et al.*.

The fraudulent misinformation manifests from numerous Death Certificate records that wrongly list "COVID-19" as a cause of death when, more accurately, the deceased tested positive for strands of proteins which may have been SARS-COV-2 virus at one time. Specifically, numerous deaths caused by fentanyl overdose, heart attacks, cancer, and many others causes are labeled a "COVID-19" death when, in fact, COVID-19 had no causal relationship to the death. All these fraudulent misrepresentations aggregate to support a false narrative that has injured Plaintiff and continues to injure society by depriving generations of people of accurate information to make an informed consent and convincing institutions to coerce people under color of law to take an experimental biological product not fully tested in humans, and one that can possibly kill them and has killed many.

One example of the public interest and immediate irreparable harm being perpetrated upon The People is a 7-year-old girl named Cassidy Baracka from Groton, Massachusetts. Although she reacted within five (5) minutes of the vaccination and died within a few days after the second dose, enduring agonizing pain in those days, there was no mention of the COVID-19 vaccine on her Death Certificate. Instead, the medical examiner listed "COVID-19" as a cause of her death. This fraudulent misinformation by both omission and commission caused other parents to vaccinate their children, and only a few weeks after Cassidy died, Preston Settles, a 15-year-old boy, collapsed on a basketball court. His body was revived without brain activity and was kept alive by machine for a few weeks until Preston was removed from life support and died. The immediate nature of this TRO request is apparent and is predicated on the most

important issue that any TRO could possibly be predicated upon: that is, the lives of children and people of all ages who are dying en masse in a death lottery in which the winners lose their lives. The evidence herein and information sought from Defendants are facts that Plaintiff, this Honorable Court, citizens of Massachusetts, citizens of U.S.A., and peoples of the world are entitled to hear in order to make informed consent to such a dangerous medical procedure as these injections.

Plaintiff contends that the only remedy for the personal injury he suffered and is suffering is the correction of the falsified information from the source, which is the Defendants.  This remedy of "corrected" Death Certificates also serves the public interest and satisfies balance of equities because it will save a net number of lives, including many children.

Plaintiff, for his Complaint for TRO and other such relief against Charles D. Baker et al, known hereinafter as "Defendants", alleges as follows:

## PARTIES

1.      Plaintiff, John Paul Beaudoin, Sr., is a citizen of the United States of America and of the Commonwealth of Massachusetts ("Plaintiff").   Plaintiff resides at 17 Fairview Road, Medfield, Norfolk County, Massachusetts. Plaintiff has filed, contemporaneously with this pleading, an affidavit in support of his claims, attached hereto as EXHIBIT A, National Vital Statistics System ("NVSS") COVID-19 Alert No. 2 Dated March 24, 2020 attached hereto as EXHIBIT B, NVSS Vital Statistics Reporting Guidance Report No.3 - April 2020 attached hereto as EXHIBIT C, Plaintiff's 93A Demand Letter to MSLaw attached hereto as EXHIBIT D. MSLaw's 93A Response Letter to Plaintiff attached hereto as EXHIBIT E. individual Death Certificate records and Vaccine Adverse Event

Reporting System ("VAERS") records correlated to evince fraud of omission, where vaccine was omitted as a cause of death, and commission, where COVID-19 was included as a cause of death though COVID-19 had no causal relation to the death attached hereto as EXHIBIT F, graphs aggregated by age group, year, and specific causes or groups of causes of death attached hereto as EXHIBIT G, and CDC internal e-mails and a Senator Ron Johnson letter to CDC both related to VAERS attached hereto as EXHIBIT H.

2.      Defendant, CHARLES D. BAKER, sued individually and in his official capacity, is the Governor of the Commonwealth of Massachusetts ("Governor Baker"), having as his principal place of business at the Massachusetts State House, 24 Beacon Street, Office of the Governor, Room 280, Boston, Massachusetts 02133.

3.      Defendant Margaret R. Cooke, sued individually and in her official capacity, is the Commissioner of the Department of Public Health of the Commonwealth of Massachusetts ("Cooke"). Defendant Cooke's office is located at the Massachusetts Department of Public Health, 250 Washington Street, Office of the Commissioner, Boston, MA 02108.

4.      Defendant Mindy Hull, sued individually and in her official capacity, is the Chief Medical Examiner for the Commonwealth of Massachusetts ("Mindy Hull"), with an office located at 720 Albany Street, Boston, Massachusetts, 02188.

5.      Defendant Janice Y. Grivetti, sued individually and in her official capacity, is a medical examiner for the Commonwealth of Massachusetts ("Grivetti"), with an office located at 720 Albany Street, Boston, Massachusetts 02188.

6.      Defendant Michele N. Matthews, sued individually and in her official capacity, is a medical examiner for the Commonwealth of Massachusetts ("Matthews"), with an office located at 720 Albany Street, Boston, Massachusetts 02188.

7.      Defendant Robert M. Welton, sued individually and in his official capacity, is a medical examiner for the Commonwealth of Massachusetts ("Welton"), with an office located at 720 Albany Street, Boston, Massachusetts 02188.

8.      Defendant Julie Hull, sued individually and in her official capacity, is a medical examiner for the Commonwealth of Massachusetts ("Julie Hull"), with an office located at 720 Albany Street, Boston, Massachusetts 02188.

## JURISDICTION AND VENUE

9.      This action arises under 18 U.S. Code § 1035 - False Statements relating to health care matters, 18 U.S. Code § 1040 - Fraud in connection with major disaster or emergency benefits, 18 U.S. Code § 1343 - Fraud by wire, radio, or television, 42 U.S. Code § 1983 - Civil Action for Deprivation of Rights, 18 U.S. Code § 241 Conspiracy Against Rights, 18 U.S. Code § 242 - Deprivation of Rights Under Color of Law, and the Fourteenth Amendment of the United States Constitution.

10.     Federal question jurisdiction lies in this Court pursuant to 28 U.S.C. § 1331.

11.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(1), (2), and (3) because the Defendants reside in this District, perform their official duties in this District, and a substantial part of the events or omissions giving rise to this action occur or occurred in this District.

## FACTUAL ALLEGATIONS

12.     Plaintiff, who has a Bachelor of Science degree in Computer & Systems Engineering and a Masters degree in Business Administration with a concentration in Management, worked more than thirty (30) years in semiconductor research and development contract sales.

13.     In July 2020, Plaintiff applied to and was accepted into Massachusetts School of Law ("MSLaw), in anticipation of earning a juris doctorate ("JD") degree.    Between August 2020 and May 2021, Plaintiff completed the first year of law school.

14.     In 2021, MSLaw instituted a policy of mandatory COVID-19 vaccination citing CDC and FDA recommendations as reasons for their new policy.

15.     Contemporaneous with the implementation of the COVID-19 vaccine mandate, MSLaw offered religious exemptions and made applications for such exemption available to students and staff.

16.     In and around June 2021, Plaintiff timely applied for the religious exemption.  To date, MSLaw has neither approved nor denied Plaintiff's application for a religious exemption.  Rather, on August 27, 2021, prior to the close of registration for Fall 2021 classes, Plaintiff received a letter from MSLaw explaining his obligation to repay his student loan.    From this letter, Plaintiff determined that he had been unenrolled from MSLaw without prior notice and before the close of registration.

17.     On November 15, 2021, Plaintiff sent an M.G.L. c. 93A Demand letter to MSLaw requesting relief.  (see Exhibit D)

18.    On December 17. 2021. MSLaw responded to Plaintiff's 93A Demand letter. again citing CDC and FDA declarations. which is based. in part. on misinformation from MA DPH.  (see Exhibit E)

19.    On or about February 3, 2022, Plaintiff read a news report that a healthy 7-year-old girl died from COVID-19 in Groton, Massachusetts.   Knowing this to be nearly impossible, Plaintiff decided to examine the data.

20.    Through a Public Records Request to MA DPH for Vital Records, in and around March 2022, Plaintiff received and subsequently began investigating Death Certificates in Massachusetts.  Of particular interest are the ICD-10 codes.  According to the CDC, these . . .

> "codes are currently the cornerstone of classifying diseases, injuries, health encounters and inpatient procedures in morbidity settings. U.S. public health officials at the federal. state. and local level rely on the receipt of . . . coded data from HIPAA-covered entities to conduct many disease-related activities. CDC programs use [these] codes to conduct surveillance (e.g.. chronic disease and injury surveillance, health care utilization, health care-associated adverse events), for case findings lists to identify cases of reportable cancers and certain birth defects and disabilities, and to provide public use data files for public analysis."
> https://www.cdc.gov/nchs/icd/icd10cm_pcs_background.htm

21.    Within the Death Certificates produced by MA DPH, the Plaintiff located the Death Certificate of Cassidy Baracka, from Groton, Massachusetts.  She was 7-years-old when she died on January 18, 2022.  Cassidy's Death Certificate, SFN 5980 Year 2022, contained four causes of death ICD-10 codes:   U071 "COVID-19", B49 "unspecified mycosis" ("Mycosis" is defined as an infection or disease caused by a fungus.). J450

"predominantly allergic asthma", R091 "pleurisy"[1]. The causes of death, in narrative form, are in the fields CODIA, CODIB, CODIC, CODID, and CONDII and stated, "COMPLICATIONS OF CORONAVIRUS-19 VIRAL INFECTION, FUNGAL AND BACTERIAL PLEURITIS." (see EXHIBIT F, Pages 3, 11, 18, 122) There is no mention of COVID-19 vaccination, nor is there a code of Y590 "Viral vaccines" or T881 "Other complications following immunization, not elsewhere classified" listed anywhere in this Death Certificate.

22.      On or about March 2022, Plaintiff then loaded the 2022 Vaccine Adverse Event Reporting System ("VAERS") file from the U.S. Department of Health and Human Services ("HHS") website (HHS.gov) and searched for 7-year-old females from Massachusetts who died January 2022. Of concern was the following entry: VAERS_ID 2038120 in 2022 was of a 7-year-old female from Massachusetts, VAX_DATE = "1/13/2022," ONSET_DATE = "1/15/2022," PRIOR_VAX = "Severe nausea and vomiting from 5min post vaccination and for the next 8-10 hours," SYMPTOM_TEXT = "Spiked a 103 fever, severe stomachache, has not had a bowel movement since the day before vaccination, which makes 3 days without one. First vaccine caused severe nausea and vomiting from 5minutes post injection and for the next 8-10 hours." (see EXHIBIT F, Page 18)   There is no follow-up in VAERS after the January 15, 2022 report. Plaintiff believes the VAERS report is of Cassidy Baracka, who died January 18, 2022, three days after this VAERS report was made and five days after receipt of the COVID-19 vaccine.

---

[1] The ICD-10 codes used by the MA DPH to identify causes of death are listed on the Public Health Information Tool section of the MA DPH website at https://www.mass.gov/service-details/icd-10-codes-used-for-phit-death-data.

23.    In and around June 2022, Plaintiff, through a subsequent Public Records Request, received updated records from MA DPH.

24.    Plaintiff also attempted to obtain Cassidy's immunization records to ascertain the time and date of vaccination for COVID-19.   However, the MA DPH denied the request citing privacy law as the basis for denial.

25.    Upon information and belief learned in or around March or April of 2022, Charles Casella, then 48-years-old, did not want to get the COVID-19 vaccination, but his employer, Bose Corporation, informed him he must get it, else his employment would be terminated.   Upon information and belief, the day before the deadline for termination, Casella conceded and obtained the COVID-19 vaccination.    The next morning, on November 16, 2021, Casella was found deceased in bed.

26.    Plaintiff located and examined Casella's Death Certificate. (see EXHIBIT F, Pages 3 and 16)  Indeed, Charles Casella did die on November 16, 2021.  Indeed, he was 48-years-old.    Speciously, the record indicated that he died from "COVID-19" and glaringly missing was mention of COVID-19 vaccination within 24-hours of his death.

27.    On January 16, 2021, Solomon A. Kizitoh expired.  SFN_NUMBER is 11199 in the year 2021.  The listed medical examiner is Rebecca Dedrick.  The CODIA/B/C/D and CONDII fields on his Death Certificate stated, "ACUTE BRONCHOPNEUMONIA AND IDIOPATHIC - THROMBOCYTOPENIA FOLLOWING COVID-19 VACCINATION", which happened in only "DAYS" before death and stated conditions contributing to death being, "HYPERTENSIVE AND ATHEROSCLEROTIC CARDIOVASCULAR DISEASE".  The ICD-10 codes are listed as:   Y590 = "Viral

vaccines", D696 = "Thrombocytopenia, unspecified", I119 = "Hypertensive heart disease without (congestive) heart failure", I250 = "Atherosclerotic cardiovascular disease, so described", J180 = "Bronchopneumonia, unspecified", and T881 = "Other complications following immunization, not elsewhere classified." (see EXHIBIT F, Pages 5 and 69) Solomon's is the only record in more than 420,000 records from 2015 through May of 2022 in which Y590 or T881 was used in a Death Certificate.  That is, Solomon's is the only record in Massachusetts since the COVID-19 vaccine to actually list the vaccine as a cause of death in ICD-10 codes tracked by the CDC.

28.     During 2021 and 2022, nine (9) Death Certificates, including Solomon Kizitoh's, contained narratives in the CODIA/B/C/D and CONDII fields that the COVID-19 vaccine had been recently administered to the decedent.  Despite the narrative indicating the administration of the COVID-19 vaccines, the ICD-10 codes Y590 = "Viral vaccines" and T881 = "Other complications following immunization, not elsewhere classified" were omitted from eight (8) of the nine (9) Death Certificates. (see EXHIBIT F, Page 5) The only way to find Death Certificates in which vaccination is mentioned as a cause or contributing condition of death is to read the individual Death Certificates or do a string search of multiple fields, as Plaintiff has done.  Some of the other causes of death listed on the eight (8) Death Certificates omitting Y590 and T881 are arrhythmia, heart failure, thrombocytopenia, hemorrhagic stroke, and Guillain Barré Syndrome.  Plaintiff noticed that all causes mentioned in narrative fields are correlated to ICD-10 code fields in all Death Certificates with the notable exception of the Y590 and T881 omitted from all but one single Death Certificate.

29.     MA DPH forwards the Commonwealth's Death Certificates to various federal agencies, including the CDC and FDA, for "classifying diseases, injuries, health encounters and inpatient procedures in morbidity settings. . . .and to provide public use data files for public analysis." https://www.cdc.gov/nchs/icd/ icd10cm_pcs_background.htm.     Accordingly, flawed or inaccurate data from the Commonwealth deprives federal agencies and, consequently, the public, of vital information used for the protection of public health.  That is, without inclusion of Y590 or T881 where appropriate, the public and all users of CDC data are deprived of analysis and understanding of the safety profile and potential lethality of the COVID-19 vaccines. These facts currently remain hidden from public view; the public is not informed and cannot give informed consent.

30.     These acts of omission in the coding of Massachusetts death certifications led the CDC and FDA to misinform universities, schools, businesses and the public regarding safety of these injectable biological products.  For example, Medical Examiner Julie A. Hull certified the Death Certificate of Diane Dubois, SFN_NUMBER 15403 in the year 2021, 62-years-old, died on March 18, 2021.  The narratives in the CODIA/B/C/D and CONDII fields on her Death Certificate read, "ACUTE INTRACRANIAL HEMORRHAGE IN THE SETTING OF THROMBOCYTOPENIA - IN A PERSON TREATED WITH COVID 19 VACCINATION 11 DAYS PRIOR - TO PRESENTATION", which happened in only "DAYS" before death.  Yet, the ICD-10 codes are inconsistent with the narrative and only list:   D696 = "Thrombocytopenia unspecified" and I629 = "Intracranial hemorrhage (nontraumatic), unspecified". The

EXHIBIT F, Pages 5 and 72)   "Acute" means suddenly and not a chronic condition. There is no mention of contributing conditions that would have been present before vaccination.   Glaringly missing from ICD-10 codes are:   Y590 = "Viral vaccines" and T881 = "Other complications following immunization, not elsewhere classified". There is also no mention of COVID-19.

31.     Plaintiff performed thousands of hours of research, data analysis, and correlation of records and causes of death.   From this analysis, Plaintiff builds the following causal chain of events.   But for the fraudulent omission of Y590 and T881 codes in the Death Certificate of Ms. Dubois, there may have been an investigation and pause of the COVID-19 vaccine in January 2021 and Brianna McCarthy, SFN_NUMBER 19578, 30-years-old, died April 15, 2021 from a massive stroke and onset of symptoms only a few days after vaccination might be alive today.   But for the fraudulent omission of Y590 and T881 on the Death Certificates of Ms. Dubois and Ms. McCarthy, Eden MacDonald, SFN_NUMBER 29067, 17-years-old, died June 11, 2021 from a "massive acute intracranial hemorrhage" might be alive today.   This causal chain could fill many pages and come back around to Cassidy Baracka 7yo died more than a year after Ms. Dubois all because of fraudulent acts of omission.   Brianna was coded as I64 = "Stroke, not specified as haemorrhage or infarction," G935 = "Compression of the brain," and U071 = "COVID-19."   (see EXHIBIT F, Pages 3 and 13)   Eden was only coded G08 = "Intracranial and intraspinal phlebitis and thrombophlebitis." (see EXHIBIT F, Pages 3 and 14)   ICD-10 codes Y590 and T881 were omitted from the Death Certificates of Brianna and Eden who received the vaccination only days before onset of symptoms.

Several other people died from these symptoms, but there is no mention of vaccination, which makes one wonder about their vaccination status and the timing between their strokes and vaccinations.

32.     Detailed in EXHIBIT F are several fraudulent misrepresentations of causes of death.  Specifically, some deaths involving vaccine as a cause, per the narrative, exclude Y590 = "Viral vaccines" and T881 = "Other complications following immunization, not elsewhere classified."  Other deaths allegedly do not involve COVID-19 as an actual or proximate cause of death but do list an ICD-10 code of U071 = "COVID-19."

33.     In 2021 and 2022, Defendant Medical Examiner Grivetti listed U071 = "COVID-19" as cause of death on numerous Death Certificates including those who died from "BLUNT FORCE TRAUMA OF TORSO" occurring only "HRS" before death.  This was SFN_NUMBER 352 in 2021.  Another example is SFN_NUMBER 19044 in 2021, a 68yo Male.  Cause of death is listed as U071 = "COVID-19".  No other causes or contributing factors to death are listed.  Not pneumonia, not heart attack, not low oxygen level, nothing – simply COVID-19.  People do not die of COVID-19 alone.  During 2020 – 2021, Grivetti certified many deaths as simply "COVID-19." (see EXHIBIT F, Pages 9 and 106-110)

34.     Egregiously, Defendant Grivetti also certified SFN_NUMBER 26429 in year 2020 with X42 = "ACUTE FENTANYL INTOXICATION" and U071 = "COVID-19." "Acute" means reacting readily, in the near term, sharp and intense, severe symptoms in a short course, as opposed to chronic, which is longer term and ongoing.  If this individual died from a fentanyl overdose in a short time, as in minutes, then the only cause of death

would rightly be "ACUTE FENTANYL INTOXICATION" **_not_** U071 = "COVID-19." It seems that Grivetti repeatedly and wrongly attributed COVID-19 as cause of death, when individuals were positive for COVID-19 at the time of death. (see EXHIBIT F, Pages 9 and 106-110)   The CDC, in EXHIBITS B & C, explains when U071 = "COVID-19" should be listed as a cause of death.

35.     Since the start of the COVID-19 pandemic in 2020 and continuing through 2022, numerous fentanyl overdose deaths, blunt force trauma deaths, and other causes of death unrelated to COVID-19 fraudulently included U071 = "COVID-19" as a cause of death on the Death Certificate.  (see EXHIBIT F, Pages 6, 8, 9, 97, 98, 99, 100, 101 & many more)

36.     The Coronavirus Aid, Relief, and Economic Security Act (CARES Act), signed into law March 27, 2020, provides a complex scheme of funding to states, hospitals, and other entities for COVID-19-related patients.   Plaintiff knows and understands through 30+ years in business settings and through Plaintiff's MBA degree that the pay plan defines the behavior.   The US Government set up the pay plan to incentivize labeling deaths with U071 = "COVID-19." As an independent journalist, Plaintiff discovered that agents of the Commonwealth of Massachusetts solicited medical examiners to include U071 = "COVID-19" on Death Certificates.   This "pattern" of conduct having "taken control" across the "enterprise" of public health government and non-government organizations is contrary to the public health mission and was lethal to many herein detailed.

37.     The CDC is now known to have directed the social media undermining of VAERS, while the CDC also eschewed analysis of VAERS data though they had primary responsibility for such work.  (see EXHIBIT H)

## CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF

## COUNT I - VIOLATION OF 18 U.S.C. § 1035 - FALSE STATEMENTS RELATING TO HEALTH CARE MATTERS
### Against All Defendants

38.     The Plaintiff repeats and re-alleges the preceding paragraphs of this Complaint and incorporates same herein.

39.     Under 18 U.S.C. § 1035,

> "(a) Whoever, in any matter involving a health care benefit program, knowingly and willfully, (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; or (2) makes any materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry, in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 5 years, or both. (b) As used in this section, the term "health care benefit program" has the meaning given such term in section 24(b) of this title."

40.     As alleged herein, the Defendants purposely falsified, concealed, or covered up material facts in writings known as Death Certificates, then certified and entered these false writings into official state and federal vital records, excerpts of which are detailed in EXHIBIT F.

41.     As alleged herein, the Defendants knew or should have known that these Death Certificate records were used to derive benefits from federal programs for COVID-19 relief and also knew or should have known that adding Y590 or T881 to a Death

Certificate would be detrimental to the state, hospitals, care providers, and pharmaceutical companies. These predicate acts comprise a pattern of fraudulent misrepresentations for pecuniary benefit and are conducted in context of an enterprise over which a "perceived superior" entity has gained control.

42.     As alleged herein, other than in single instance, the medical examiners, in acts of omission, did not certify that the COVID-19 vaccine was a proximate, actual, or contributory cause or condition leading to the death of the decedent despite knowledge that the vaccine was administered within minutes, hours, or days of the onset of symptoms clearly detailed in medical reports examined by those same medical examiners.

43.     As alleged herein, medical examiners, in acts of commission, did certify that U071 = "COVID-19" was a proximate, actual, or contributory cause or condition leading to the death of the decedent when they knew, or should have known, that COVID-19 had no relevant influence in the causal chain of death. COVID-19 positivity in the decedent was irrelevant, yet listed as a cause of death purposely to derive a health-care facility financial benefit for the overall enterprise.

## COUNT II -VIOLATION OF 18 U.S.C. § 1040 - FRAUD IN CONNECTION WITH MAJOR DISASTER OR EMERGENCY BENEFITS
### Against All Defendants

44.     The Plaintiff repeats and re-alleges the preceding paragraphs of this Complaint and incorporates same herein.

45.     Under 18 U.S.C. § 1040.

"(a) Whoever, in a circumstance described in subsection (b) of this section, knowingly (1) falsifies, conceals, or covers up by any trick, scheme, or device any material fact; or (2) makes any materially false, fictitious, or fraudulent statement or representation, or makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or representation, in any matter involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid … in connection with … services related to any emergency or major disaster declaration as a prime contractor with the United States or as a subcontractor or supplier on a contract in which there is a prime contract with the United States, shall be fined under this title, imprisoned not more than 30 years, or both.  (b) A circumstance described in this subsection is any instance where - (1) the authorization, transportation, transmission, transfer, disbursement, or payment of the benefit is in or affects interstate or foreign commerce; (2) the benefit is transported in the mail at any point in the authorization, transportation, transmission, transfer, disbursement, or payment of that benefit; or (3) the benefit is a record, voucher, payment, money, or thing of value of the United States, or of any department or agency thereof. (c) In this section, the term "benefit" means any record, voucher, payment, money or thing of value, good, service, right, or privilege provided by the United States, a State or local government, or other entity."

46.    "Benefit" being defined as a "record" or "payment" may comprise a Death Certificate certified by a medical examiner or a payment from the federal government to a state, hospital, or other organizational part of the overall fraudulent records enterprise. The Death Certificate is certified by medical examiners and transferred to the federal government in order for business entities and the Commonwealth to receive a return transfer of pecuniary interest via wire or other electronic method of payment.

47.    The Coronavirus Aid, Relief, and Economic Security Act (CARES Act), signed into law March 27, 2020, provides a complex scheme of funding to states, hospitals. and other entities for COVID-19-related patients.  It is through this disaster relief fund that

Defendants' false writings invoke the 18 U.S.C. § 1040 statute, "Fraud in connection with major disaster or emergency benefits."

48.     As alleged herein, the Defendants purposely, knowingly, or recklessly entered false information on Death Certificates.   The Commonwealth of Massachusetts derived payment benefit from the U.S. federal funds set aside for COVID-19 relief based on that false information.  The false information was sent to the CDC as vital records influencing CDC's recommendations for COVID-19 mitigation measures including vaccination.

## COUNT III - VIOLATION OF 18 U.S.C. § 1343 FRAUD BY WIRE, RADIO, OR TELEVISION
### Against All Defendants

49.     The Plaintiff repeats and re-alleges the preceding paragraphs of this Complaint and incorporates same herein.

50.     Under 18 U.S.C. § 1343,

> "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice. shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

50.     As alleged herein, the Defendants purposely, knowingly, or recklessly entered false misinformation on Death Certificates, that the Commonwealth of Massachusetts

derived payment benefit from the U.S. federal funds set aside for COVID-19 based on that false misinformation entered. and that the information falsely entered was recorded and sent to the CDC as vital records influencing CDC's recommendations for COVID-19 mitigation measures including vaccination.

51.     As alleged herein, the Defendants transmitted and/or uploaded by wire the Commonwealth's Death Certificates for the calendar years 2020, 2021, 2022 to various federal agencies' software systems, including those of the CDC and FDA.  These Death Certificates contained misinformation regarding COVID-19 as the alleged cause of death, or the omission of the COVID-19 vaccination as a cause or contributing cause of death.

## COUNT IV - DETRIMENTAL RELIANCE ON FALSE STATEMENTS BY THIRD PARTIES
### Against All Defendants

52.     The Plaintiff repeats and re-alleges the preceding paragraphs of this Complaint and incorporates same herein.

53.     Under *Pasternack v. Laboratory Corporation of America Holdings*, 807 F.3d 14 (2d Cir. 2015), the 2d Circuit held that the reliance element of fraud is not necessarily established through a third party.  However, under *Pasternack v. Laboratory Corporation of America Holdings*, 2016 N.Y.Slip.Op. 05179 (June 30, 2016), the NY Court of Appeals stated that if the question to the 2d Circuit had been reformulated to be:

> "Whether a plaintiff may establish the reliance element of a cause of action for fraud under New York law by showing that a third party relied on a defendant's false statements resulting in injury to the plaintiff where the statements were made with the intent of influencing the plaintiff and causing injury."

then the conclusion would be

"that the reliance element of a cause of action for fraud may be established through evidence that a third party relied on the alleged misrepresentation if the misrepresentation was made with the intent of influencing the plaintiff and causing injury."

54.    As alleged herein, MA DPH and their medical examiner agents engaged in a pattern of purposely fraudulent activity in adding U071 codes to Death Certificates when COVID-19 was not a cause of death and omitting Y590 or T881 from Death Certificates in which they knew or should have known that the COVID-19 vaccine was almost certainly a cause of death.  The purposeful activity was part of an enterprise intended to garner disaster relief money from the federal government for the Commonwealth of Massachusetts and for the hospitals and other businesses of Massachusetts.

55.    As alleged herein the Defendants made misrepresentations to the CDC, FDA, and, by extension, MSLaw, upon which MSLaw relied and instituted a rule of required COVID-19 vaccination, injuring Plaintiff.   Other law schools also relied on the Defendants' misrepresentations and also instituted rules requiring COVID-19 vaccination, further injuring Plaintiff in depriving him of rights afforded COVID-19 vaccinated people.   Third party liability extends through MSLaw to the Plaintiff where the Defendants made the misrepresentations knowing that third parties including MSLaw and Plaintiff would rely on the misrepresentations.

**COUNT V - VIOLATIONS OF 42 U.S.C. § 1983 - CIVIL ACTION FOR DEPRIVATION OF RIGHTS, 18 U.S.C. § 241- CONSPIRACY AGAINST RIGHTS, 18 U.S.C. § 242- DEPRIVATION OF RIGHTS UNDER COLOR OF LAW, and EQUAL PROTECTIONS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION**

**Against All Defendants**

56.     The Plaintiff repeats and re-alleges the preceding paragraphs of this Complaint

and incorporates same herein.

57.     Under 42 U.S.C. § 1983.

> "Every person who ... causes to be subjected, any citizen of the United
> States ... to the deprivation of any rights, privileges. or immunities
> secured by the Constitution and laws, shall be liable to the party injured in
> an action at law, suit in equity, or other proper proceeding for redress,"

58.     Under 18 U.S.C. § 241,

> "If two or more persons conspire to injure, oppress, threaten, or intimidate
> any person in any State, Territory, Commonwealth, Possession, or District
> in the free exercise or enjoyment of any right or privilege secured to him
> by the Constitution or laws of the United States ..."

59.     Under 18 U.S.C. § 242,

> "Whoever, under color of any law, statute, ordinance, regulation, or
> custom, willfully subjects any person in any State ... to the deprivation of
> any rights, privileges, or immunities secured or protected by the
> Constitution or laws of the United States ... shall be fined under this title
> or imprisoned not more than one year, or both"

60.     Under Amendment XIV, Section 1 of the United States Constitution,

> "... nor deny to any person within its jurisdiction the equal protection of
> the laws."

61.     Plaintiff was deprived of the right to attain knowledge of a legal education that

was available to all others who chose to accept the COVID-19 vaccination.  Plaintiff was

singled out and treated differently though he has a right to equal protection of the laws.

62.     The Defendants, by direct action or through *respondeat superior*. knew or should

have known the results that would flow from their conduct of fraudulent data entry on

Death Certificates.   Specifically, any reasonable person in their positions should have

known that mandatory vaccination would result as a consequence of the fraud on Death Certificates, which portrayed the opposite of reality. That is, the falsity of the writings by the Defendants protects the perception of safety of the COVID-19 vaccines and the perception that COVID-19 is deadly to healthy people, thereby causing MSLaw, other law schools, and other entities to enact rules under color of law that endanger people, and deprived Plaintiff and other citizens of the right to contract for knowledge and education.

63. The Defendants did commit these acts of omission and commission, in an agreement, beyond a mere tacit understanding, among multiple people and entities, expressly or impliedly. The co-conspirators should have known that the falsifications would carry through the enterprise of MA DPH to the CDC and FDA then to the public, which would act upon such false instruments by making coercive rules under color of law that harm all citizens in physical injury and injury manifesting in deprivation of rights.

64. While the CDC is responsible for maintaining, monitoring, and analyzing VAERS, referenced widely in EXHIBIT F, EXHIBIT H depicts the CDC denigrating VAERS. The CDC e-mail and presentation in EXHIBIT H, obtained through FOIA by America First Legal, evince beyond doubt that the CDC conspired with social media companies to append, without context, the inadequacies of VAERS, to posts in which people cited VAERS data damaging to COVID-19 vaccine reputation. To be clear, CDC co-conspirators agreed to undermine the credibility of the CDC's own VAERS pharmacovigilance system, thus assailing the CDC's mission regarding VAERS. Also in EXHIBIT H, Senator Ron Johnson's letter to the CDC highlights the CDC's purposeful shirking of the responsibility of monitoring, analyzing, and reporting on VAERS, which

contains thousands of COVID-19 vaccine death narratives. Massachusetts citizens died due to the conspiracy against rights involving the Defendants, the CDC, and other entities. Thus, Plaintiff's right to a legal education continues to be violated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

A.     Issue a Temporary Restraining Order enjoining the Defendants to provide Plaintiff access to the Massachusetts Immunization Information System ("MIIS") and VITAL records, a workspace in a state office, and a robust computer with Excel so that Plaintiff may perform the correlation that all public health agencies in the nation have avoided performing thus far;

B.     Issue a Temporary Restraining Order enjoining the Defendants to provide Plaintiff access to Massachusetts autopsy reports and medical files of decedents, a workspace in a state office, and a robust computer with Excel so that Plaintiff may perform the correlation that all public health agencies in the nation seem to have avoided performing thus far;

C.     Issue a Temporary Restraining Order enjoining the Defendants to provide Plaintiff the COVID-19 vaccination records of Brianna McCarthy, Eden MacDonald, Holly Hodgdon, Charles Casella, Abigail Fitzgerald, Cassidy Baracka, and Preston Settles;

D.     Issue a Temporary Restraining Order enjoining all persons within the Commonwealth of Massachusetts from administering any COVID-19 vaccine until such time as the Commissioner of MA DPH reviews the alleged vaccine-caused deaths detailed in EXHIBIT F and personally assures this court in a sworn statement that the benefits of the COVID-19 vaccines outweigh the risks of injury or death in the context of all the Massachusetts data;

E.      Preliminarily and permanently enjoin Defendants, their officers, officials, agents, servants, employees, and all persons acting in concert or participation with them, from continuing to engage in unlawful and fraudulent conduct as alleged herein;

F.      Declaratory judgment and order that Defendants must correct the Death Certificates to reflect the true and known causes of death and delete the false causes;

G.      Declaratory judgment and order that Defendants must make a public declaration and notice to all Massachusetts news organizations in TV, radio, newspaper, and podcasts that fraud was committed, that death counts from COVID-19 have been grossly exaggerated, and that the COVID-19 vaccine killed far more people than previously known, including younger ages;

H.      Grant Plaintiff his attorney's fees incurred in bringing this action, to the extent authorized by 42 U.S.C. § 1983, or other law;

I.      Such other and further relief as this Court deems just and proper.

Dated: August 22, 2022                    Respectfully submitted,

JOHN PAUL BEAUDOIN, SR. (*pro se*)
17 Fairview Road
Medfield, MA 02052
Mobile:  508-277-7276
e-mail:   johnbeaudoinsr@gmail.com