## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

JOHN PAUL BEAUDOIN, SR.,

     Plaintiff,

v.

CHARLES D. BAKER, et al.,

     Defendants.
_____

**Civil Action No.**
**1:22-CV-11356-NMG**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

The defendants, seven Massachusetts officials named in both their official and individual capacities (the "Defendants"), submit this memorandum of law in support of their motion to dismiss all counts of the complaint filed by the plaintiff, John Paul Beaudoin, Sr. ("Plaintiff").

## Introduction

Plaintiff is sincerely convinced that both state and federal authorities have adopted a wrong-headed, and potentially dangerous, approach to battling the COVID-19 pandemic. After conducting his own, independent review of the publicly available data, Plaintiff alleges that the Defendants, in recording the causes of death of Massachusetts residents, both (a) overstated the number of deaths attributable to the COVID-19 virus; and (b) understated other deaths that were caused, in whole or in part, by the decedent's reaction to the COVID-19 vaccine itself.

Moreover, Plaintiff believes that various Massachusetts officials reached these false conclusions knowingly and intentionally, driven by a desire to inflate the state's COVID-19 mortality statistics and, in the process, entitle the state and its health-care providers to a higher

percentage of federal pandemic-mitigation funding.  Accordingly, he brings suit against these state officials – in both their official and individual capacities – under an array of federal criminal statutes and common-law fraud theories.

While the Defendants categorically deny the wrongful acts that Plaintiff alleges, they are mindful of the requirement that, in reviewing a "facial" motion to dismiss for lack of subject-matter jurisdiction such as this one, a court must treat all well-pleaded facts as true, without evaluating the likely veracity of those facts.  See, e.g., Cebollero-Bertran v. Puerto Rico Aqueduct and Sewer Authority, 4 F.4th 63, 69 (1st Cir. 2021).  Even if all of Plaintiff's factual allegations were true, however, he has articulated no plausible theory as to why this Court has subject-matter jurisdiction to adjudicate his claims.  Among other things, he lacks standing to bring his claims; the federal criminal statutes he invokes do not provide for a private right of action; his state-law claim is barred by the Eleventh Amendment; and his claims against various officials in their individual capacities fail as a matter of qualified immunity.  Accordingly, each of the Complaint's five counts must and should be dismissed.

## Factual Background

Plaintiff, a professional engineer, is a student pursing a law degree from the Massachusetts School of Law (the "Law School"), a private law school located in Andover, Massachusetts.  Compl. at paras. 12-13.  At some point after the conclusion of the 2020-21 academic year, the Law School, relying on guidance furnished by state and federal regulators, implemented a policy requiring all students to show proof of vaccination against COVID-19 as a pre-condition of continued enrollment.  Compl. at para. 14.  The Law School's policy permitted students to apply for an exemption from the vaccination requirement, upon a showing that their decision not to become vaccinated arose from a genuine religious belief.  Compl. at para. 15.

Plaintiff opted not to receive any of the available COVID-19 vaccines; rather, he applied to the Law School for a religious exemption from the vaccination policy.  Compl. at para. 16. The complaint contains no allegation about any decision by the Law School upon Plaintiff's exemption application.  Instead, in an August 27, 2021 letter, the Law School informed Plaintiff that his status had been changed to "unenrolled" for the forthcoming academic year, thereby triggering his obligation to pay back the student loans he had accrued to date.  Compl. at para. 16.  The Law School's action led Plaintiff to pursue legal remedies against the school for what Plaintiff characterized as wrongful actions against him; that dispute is not part of the instant litigation, nor is the Law School a defendant here.

Insofar as the Law School's vaccination policy was implemented, at least in part, in reliance upon data compiled by the Massachusetts Department of Public Health (the "Department"), Plaintiff undertook his own independent investigation of (a) the number of deaths proximately attributable to COVID-19 in Massachusetts during the course of the pandemic; and (b) the efficacy, and attendant risks, of the COVID-19 vaccines made available to the public.  A summary of Plaintiff's research appears in the Complaint at paras. 19-48.  His research led Plaintiff to conclude that the Defendants knowingly over-counted the number of Massachusetts deaths caused by the COVID-19 virus, and knowingly under-counted the number of Massachusetts deaths caused by COVID-19 vaccines.  Compl. at 48.  Plaintiff brought suit against the Defendants, alleging that they committed various fraudulent acts within the meaning of federal criminal statutes, and that he was harmed as a result, insofar as his unvaccinated status led to his unilateral disenrollment by the Law School.

**<u>Plaintiff's Complaint</u>**

Plaintiff seeks relief against the Defendants under five distinct, but inter-related counts. Three of the five arise under Title 18 of the United States Code, which criminalizes certain fraudulent behaviors in the health-care context. Each count is grounded in the same premise: that Massachusetts medical examiners allegedly falsified information on Massachusetts death certificates, and that the Department, in aggregating data from these death certificates, allegedly sent incorrect data to federal regulators, including the Centers for Disease Control and Prevention (the "CDC"), that induced those regulators to recommend mandatory-vaccination policies like the one adopted by the Law School.

Count One alleges that Massachusetts medical examiners issued death certificates that they knew, or should have known, were false, in that the death certificates wrongly identified the COVID-19 virus as a "proximate, actual, or contributory cause" of death. Plaintiff alleges that these actions constituted criminal fraud within the meaning of 18 U.S.C. sec. 1035, which makes it a crime to "make[] any false, fictitious or fraudulent statements or representations . . . in connection with the delivery of or payment for health care benefits, items or services." Id. Plaintiff argues that alleged misrepresentations on Massachusetts death certificates violated this provision because the Defendants knew, or should have known, that Massachusetts and its health care providers would receive benefits from the federal government under the Coronavirus Aid, Relief and Economic Security Act (the "CARES Act") commensurate with the state's losses due to COVID-19.

Count Two charges that the Defendants' alleged conduct also violated 18 U.S.C. sec. 1040, which criminalizes false statements made in connection with the procurement of property or services related to "any emergency or disaster declaration."

Count Three charges that the Defendants' alleged conduct constituted criminal wire fraud within the meaning of 18 U.S.C. sec. 1343, insofar as information from the allegedly false death certificates was transmitted to federal regulators electronically.

Count Four asserts what appear to be state-law fraud claims against the Defendants, for allegedly inducing third parties (i.e., federal regulators) to rely to their detriment upon allegedly false information in the Massachusetts death certificates, thereby paying unduly high benefits to Massachusetts entities under the CARES Act and other pandemic-mitigation programs.

Count Five alleges that Plaintiff was deprived of his constitutional rights to due process and equal protection (i.e., his right to pursue a legal education) as a result of the Defendants' knowing transmission of allegedly false data to federal regulators, including the CDC.

## ARGUMENT

### I.    Legal Standard Under Fed. R. Civ. P. 12(b)(1).

Where, as here, a defendant challenges the Court's subject-matter jurisdiction to adjudicate a plaintiff's claim, the plaintiff bears the burden of establishing that the Court has jurisdiction.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  If the defendant mounts a "facial" or "sufficiency" challenge to jurisdiction, the Court will assess the sufficiency of the plaintiff's jurisdictional allegations by construing the complaint liberally, treating all well-pled facts are true and drawing all reasonable inferences in the plaintiff's favor.  Cebollero-Bertran, 4 F.4th at 69; Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).  If, however, the defendant advances a "factual" challenge by controverting the accuracy, rather than the sufficiency, of the alleged jurisdictional facts, then "the plaintiff's jurisdictional averments are entitled to no presumptive weight," and the Court will consider the allegations by both parties and resolve the factual disputes as they relate to jurisdiction.  Id.  Defendants here mount a facial

or sufficiency challenge to subject-matter jurisdiction, arguing that even if the Court accepts as true all of Plaintiff's factual allegations in the complaint, the case must still be dismissed for lack of subject-matter jurisdiction.

**II.      Plaintiff Lacks Standing to Challenge Any of the Actions Allegedly Undertaken by Defendants.**

Article III standing is "a constitutional precondition to a federal court's power to adjudicate a case." Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 44 (1st Cir. 2005); accord Osediacz v. City of Cranston, 414 F.3rd 136, 137 (1st Cir. 2005); Rhode Island Association of Realtors, Inc. v. Whitehouse, 199 F.3d 26, 30 (1st Cir. 1999).  The burden of establishing standing lies with the party invoking federal jurisdiction.  Osediacz, 414 F.3d at 138. Consequently, Plaintiff must show that he "(1) personally has suffered some actual or threatened injury, (2) the injury fairly can be traced to the challenged conduct, and (3) a favorable decision likely will redress [the injury]."  Wine & Spirits Retailers, 418 F.3d at 44; accord Friends of the Earth, Inc. v. Laidlaw Environmenal Services (TOC), Inc., 528 U.S. 167, 180-181 (2000) (citing Lujan, 504 U.S. at 560-561).  "A mere interest in an event – no matter how passionate or sincere the interest and no matter how charged with public import the event – will not substitute for an actual injury."  United States v. AVX Corp., 962 F.2d 108, 114 (1st Cir. 1992).

In addition to the constitutional requirements of injury, redressability, and causation, the doctrine of standing also has "prudential dimensions."  Katz v. Pershing, L.L.C., 672 F.3d 64, 72 (1st Cir. 2012).  Among other things, a claim must not amount to "merely a generalized grievance."  Id. Accord AVX Corp., 963 F.3d at 114.  Although prudential requirements "may be relaxed in some contexts, the constitutional requirements apply with equal force in every case."

Katz, 672 F.3d at 72 (quoting National Organization for Marriage v. McKee, 649 F.3d 34, 46 (1st Cir. 2011), cert. denied, 565 U.S. 1234 (2012)).[1]

Plaintiff's complaint fails to establish Article III standing because it does not allege a cognizable injury that can be fairly traced to any alleged action of the Defendants.  Indeed, the only harm Plaintiff claims to have personally borne – his inability to register for second-year classes at the Law School because he neither satisfied nor qualified for exemption from the Law School's vaccination mandate – was not a consequence, either directly or indirectly, of the alleged bad acts by the Defendants.  Plaintiff was denied enrollment because he fell afoul of the private Law School's vaccination policy and evidently failed to satisfy the Law School's religious-exemption process – acts that may give Plaintiff recourse against the Law School, but not against the Defendants.[2]  In response to Plaintiff's inquiry, the Law School informed him that it adopted its vaccination policy in reliance upon guidance offered by the federal CDC and Food and Drug Administration, among others.  Compl. at para. 18.  At best, Plaintiff alleges that those federal agencies rely in part on aggregate data compiled and sent to them by the Defendants, as

---

[1] The First Circuit recently expressed doubt as to whether prudential considerations remain relevant in determining whether a plaintiff has Article III standing.  See Aguasvivas v. Pompeo, 984 F.3d 1047, 1053 (1st Cir. 2021) ("We acknowledge that the Supreme Court has moved away from considering prudential standing separate and apart from Article III standing, see Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 125–26, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014) (explaining that to take prudential considerations into account in determining standing would be "in some tension with our recent reaffirmation of the principle that 'a federal court's obligation to hear and decide' cases within its jurisdiction 'is virtually unflagging' " (quoting Sprint Commc'ns., Inc. v. Jacobs, 571 U.S. 69, 77, 134 S.Ct. 584, 187 L.Ed.2d 505 (2013))).

[2] Plaintiff alleges that he sent a demand letter to the Law School pursuant to M.G.L. c. 93A, but does not specify what action, if any, he may have taken against the Law School to challenge its policy, or that policy's application to him.  See Compl. at para. 17.

well as by public health officials in 49 other states and numerous other jurisdictions, in formulating guidance regarding virus-mitigation measures.  The chain of causation, therefore, is far too attenuated—encompassing, among other things, the Defendants' collection and reporting of cause-of-death data, the CDC and FDA's guidance recommending vaccine mandates, the private Law School's independent decision to establish a vaccine mandate subject to a religious exemption, and Plaintiff's failure to establish entitlement to an exemption from the Law School's mandate—to constitute cognizable harm that is fairly traceable to the Defendants.

As the Supreme Court observed in Lujan, when a plaintiff challenges action or inaction by the government, the standing inquiry "depends considerably upon whether the plaintiff is himself an object of action (or foregone action) at issue."  504 U.S. at 561.  If he is not, as here, standing is "ordinarily substantially more difficult to establish."  Id. at 562 (citations and internal quotation marks omitted).  This is because, in such circumstances, "causation and redressability ordinarily hinge on the response of the regulated (or regulable) third part[ies] to the government action or inaction—and perhaps on the response of others as well.  The existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict."  Id.  The Law School's adoption of a vaccine mandate, and its application to Plaintiff, is not the type of injury that "fairly can be traced" to the alleged conduct of the Defendants, as it would have to be to create standing within the meaning of Lujan.  See also Allen v. Wright, 468 U.S. 737, 752 (1986) (Article III standing defeated where "line of causation between the illegal conduct and injury too attenuated" or where "prospect of obtaining relief from the injury as a result of a favorable ruling too speculative").

8

Nor would a favorable decision in this case entitle Plaintiff to redress of the harm he allegedly suffered.  In his Prayers for Relief, Plaintiff does not even ask for an order reinstating him as a student at the Law School, or altering the Law School's vaccination policy in any way. (Nor could he, as the Law School is not a party to this action.)  Indeed, he seeks only declaratory and injunctive relief that would alter medical examiners' methodology in issuing death certificates, and orders granting Plaintiff access to additional data in furtherance of his research efforts.  Even if the Defendants were to change their COVID-related reporting in the manner sought by Plaintiff, it is pure speculation whether the Law School would change its vaccination policy, or (if not) whether Plaintiff would qualify for an exemption from the policy.  In short, even attaining all of the relief he seeks in his complaint would not redress the harm Plaintiff alleges that he personally suffered as a result of the Defendants' actions.  This, too, hollows out his claim of standing.  See Friends of the Earth, 528 U.S. at 181.

Notwithstanding his claims about his disenrollment by the Law School, the essence of Plaintiff's complaint is much broader: i.e., that the Defendants allegedly willfully recorded false information on Massachusetts death certificates, as part of a scheme to attract enhanced federal funding under the CARES Act.  But Plaintiff likewise lacks standing to prosecute claims of this nature.  Even if the pleaded facts were true, Plaintiff alleges no personal, particularized injury as a result of the challenged conduct.  At best, he asserts that the federal agencies that administer pandemic-mitigation programs have been fraudulently induced to make unwarranted payments to Massachusetts entities, and that Plaintiff, as a taxpayer, is a victim of this alleged fraud.  But the Supreme Court has repeatedly affirmed that such a "generalized grievance" is insufficient to create Article III standing.  See Lujan, 504 and 574-575, quoting United States v. Richardson, 418 U.S. 166, 171, 176-177 (1974) (plaintiff lacked standing to challenge federal funding of the

Central Intelligence Agency where "impact on [plaintiff] is plainly undifferentiated and common to all members of the public") (internal quotation marks omitted).  Accord Allen , 468 U.S. at 754 ("assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Article III without draining those requirements of meaning.").

In short, to establish standing to challenge the Defendants' conduct described in the complaint, Plaintiff must articulate a causal link between that conduct and a direct and individualized harm to himself, one that can be redressed by a ruling in his favor.  Because he has failed to do that here, his claims must be dismissed.

### III.   Counts One Through Three of Plaintiff's Complaint Are Brought Under Federal Criminal Statutes, Which Confer No Private Right of Action on Individual Plaintiffs.

The first three counts of Plaintiff's complaint all seek recovery under federal criminal statutes.  See Count I (brought under 18 U.S.C. sec. 1035, which criminalizes misrepresentations made in connection with healthcare benefits); Count II (brought under 18 U.S.C. sec. 1040, which criminalizes misrepresentations made in connection with civil emergencies or disaster declarations); and Count III (brought under 18 U.S.C. sec. 1343, the wire fraud statute).  Because none of these statutes confers a private right of action upon a plaintiff in a civil action, these claims must also be dismissed for this independent reason.  See, e.g., Wisdom v. First Midwest Bank, 167 F.3d 402, 407-09 (8th Cir. 1999) (collecting cases holding that plaintiff lacked private right of action to enforce federal mail and wire fraud statutes); Ingalls v. Adams Community Bank, No. 19-cv-30006-MGM, 2020 WL 3722317, at *7 (D. Mass. Mar. 25, 2020) (same).

"A private right of action, like federal law itself, must be created by Congress."  Bonano v. East Caribbean Airline Corp., 365 F.3d 81, 84 (1st Cir. 1984).  Congress's intention must be

divined from the text of the statute in question, and, in the absence of express language creating a private right of enforcement, such a right should only be inferred where Congress clearly intended to create both a private cause of action and a corresponding remedy. <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 283 (2002).

Congressional intent to create a private right of action ought not to be read into a statute unless its text is "phrased in terms of the persons benefited." <u>Gonzaga</u>, 536 U.S. at 283-284. "If a statute does not cede private rights to an identifiable class, it fails on the first prong of the test." <u>Bonano</u>, 365 F.3d at 84, citing <u>Alexander v. Sandoval</u>, 532 U.S. 275, 289 (2001). None of the three criminal statutes invoked by Plaintiff here identifies such a class, let alone cedes private rights to members of that class. Rather, each is phrased explicitly as a criminal statute, setting forth the elements of the crime in question and specifying the criminal penalty (fines and/or a term of incarceration) that shall be assessed against a person found guilty of violating the statute. None contemplates use of the statute as a civil cause of action, and none identifies a class of individuals or entities who may prosecute civil claims thereunder. As such, claims under each of these statutes fails the first prong of the <u>Gonzaga</u> test.

Nor do those claims fare any better under <u>Gonzaga</u>'s second prong. The only enforcement mechanism contemplated by any of the three statutes in question is criminal prosecution. <u>See</u>, <u>e.g.</u>, 18 U.S.C. sec. 1035 ("Whoever, in any matter involving a health care benefit program, knowingly and willfully" makes specific kinds of false statements or misrepresentations "shall be fined under this title or imprisoned not more than five years, or both."). Where Congress has expressed a preference for public enforcement of a statute, this preference forecloses reading a statute as creating a privately available remedy. <u>Bonano</u>, 365 F.3d at 85.

Accordingly, where each of Plaintiff's first three counts arises under a statute that confers no private right of action, those counts cannot proceed and must be dismissed.

### IV.     Count Four is Barred by the Eleventh Amendment.

Absent an express and unequivocal waiver of a state's sovereign immunity, the Eleventh Amendment bars a federal court from asserting jurisdiction over all state-law claims against that state, and against any of its officials acting in their official capacity.  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 102, 121 (1984) (clarifying that Ex parte Young doctrine, which permits claims for prospective, injunctive relief against state officials, has no application to state-law claims).  Indeed, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment."  Id. at 106.

Count Four of Plaintiff's complaint does not state a specific cause of action.  It does, however, appear to invoke state-law, common-law fraud principles, insofar as it cites Pasternack v. Laboratory Corporation of America Holdings, 807 F.3d 14 (2nd Cir. 2015), for the proposition that a fraud claim under New York law may go forward upon a showing that plaintiff relied to his detriment upon fraudulent statements made by defendant to a third party.  To the extent that Plaintiff is making a similar claim here – i.e., that Plaintiff (and others, including the Law School) relied to their detriment upon allegedly false statements made by the Defendants to federal regulators -- he is apparently attempting to satisfy an element of a common-law fraud claim under Massachusetts law.  As such, Count Four is barred by the Commonwealth's sovereign immunity under the Eleventh Amendment, and the Court must dismiss it.

**V.    Plaintiff's Claims for Damages Against the Defendants
in Their Individual Capacities Must Be Dismissed as
Barred by Qualified Immunity.**

Finally, to the extent that the Plaintiff seeks monetary damages against the Defendants in

their individual capacities,[3] those claims fail as a further matter of law because the Defendants

are shielded by qualified immunity. Under the qualified immunity doctrine, government officials

sued in their individual capacities "are immune from damages claims" unless "(1) they violated a

federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly

established at the time." Eves v. LePage, 927 F.3d 575, 582-83 (1st Cir. 2019) (en banc)

(quoting District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018)).

To meet his burden of establishing the violation of a clearly established federal right,

Plaintiff must "demonstrate that the law was sufficiently clear [such] that every reasonable

official would understand that what he is doing is unlawful." Eves, 927 F.3d at 583 (quotation

marks omitted). "[E]xisting precedent must have placed the statutory or constitutional question

beyond debate." Id. (quotation marks omitted); see also Castagna v. Jean, 955 F.3d 211, 219 (1st

Cir. 2020) (defendants are entitled to qualified immunity "where it is at least arguable that the

defendant's actions were constitutional . . . and where there was no controlling authority or even

a consensus of cases of persuasive authority" (internal quotation marks omitted)).  Moreover,

---

[3] It is not entirely clear whether Plaintiff seeks monetary damages against any of the Defendants
in their individual capacities.  Each of his Prayers for Relief seeks declaratory or injunctive
relief, barring the Defendants from using existing classifications in stating causes of death on
death certificates, and/or directing the Defendants to provide additional data to Plaintiff.
Plaintiff does, however, bring causes of action under federal criminal statutes which provide,
among other things, for fines against parties found liable for violating the statute.  The complaint
also speaks of making Plaintiff whole by restoring his ability to pursue a law-school education,
an opportunity he claims he was denied as a result of the Defendants' alleged actions.  See, e.g.,
Compl. at para. 64.  Thus, while the complaint does not explicitly ask for an award of money
damages, any suggestion of personal liability of any Defendant to pay money to Plaintiff is
foreclosed by qualified immunity.

"the right that was allegedly violated must be defined 'in a particularized sense so that the contours of the right are clear to a reasonable official.'" <u>Castagna</u>, 955 F.3d at 219 (quoting <u>Eves</u>, 927 F.3d at 583).

Plaintiff's claims against the Defendants here do not satisfy either part of the <u>Eves</u> test. As discussed above, Plaintiff had no "federal statutory or constitutional right" to any particular action by the Defendants here, because the statutes under which he brought suit furnish no private right of action and because Plaintiff lacks standing to vindicate such a right, even if it existed.  Moreover, there is no legal precedent establishing "the unlawfulness of [Defendants'] conduct" that was "clearly established" at the time.  <u>Eves</u>, 927 F.3d at 582-583.  At most, Plaintiff alleges that Defendant medical examiners, using their professional judgment, categorized deaths using a methodology that Plaintiff believes was improper.  Even if there were a cause of action that permitted him to litigate this claim, which there is not, there existed no "controlling authority," then or now, that made it "clear to a reasonable official" that the conduct in question was plainly illegal.  <u>Castagna</u>, 955 F.3d at 219.  As such, the Defendants' qualified immunity bars any award of damages against them arising out of the challenged conduct.

<b><u>CONCLUSION</u></b>

For the reasons discussed above, the Plaintiff's complaint should be dismissed in its entirety.

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL


<u>/s/ Daniel J. Hammond</u>
Daniel J. Hammond
Attorney General

14

Government Bureau
BBO # 559475
One Ashburton Place, Rm. 2014
Boston, Massachusetts 02108
(617) 727-2200, ext. 2078
dan.hammond@mass.gov

Dated: December 2, 2022

## <u>CERTIFICATE OF SERVICE</u>

      I, Daniel J. Hammond, hereby certify that I caused a true and accurate copy of the attached Memorandum to be served upon all parties listed on this Court's electronic filing portal on December 2, 2022.


                              /s/ Daniel J. Hammond
                              Daniel J. Hammond

16