## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| JOHN PAUL BEAUDOIN, SR.,   ) | |
|   ) | |
| Plaintiff,   ) | Civil Action No.  1:22-cv-11356-NMG |
|   ) | |
| v.   ) | |
|   ) | |
| CHARLES D. BAKER, individually and in ) | |
| his Official Capacity as Governor of the ) | |
| Commonwealth of Massachusetts, ) | |
| MARGARET R. COOKE, individually and ) | |
| in her Official Capacity as Commissioner ) | |
| of the Department of Public Health of ) | |
| the Commonwealth of Massachusetts, ) | |
| MINDY HULL, individually and in her ) | |
| Official Capacity as Chief Medical ) | |
| Examiner of the Commonwealth of ) | |
| Massachusetts, ) | |
| JANICE Y. GRIVETTI, MICHELE N. ) | |
| MATTHEWS, ROBERT M. WELTON, and ) | |
| JULIE HULL, individually and in their ) | |
| Official Capacities as Medical Examiners ) | |
| in the Commonwealth of Massachusetts, ) | |
| ) | |
| Defendants. ) | |

---

## PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

Plaintiff seeks equitable relief for an immediate and ongoing irreparable injury for which there is no remedy at law.

Plaintiff was unenrolled from law school because he refused to get the covid vaccine. The law school stated that they enacted the vaccine mandate based on covid data, much of which

originates from Death Certificates fraudulently certified by Defendants or their agents.   Other schools require covid vaccination based, in part, on the same fraudulent Death Certificates.

Plaintiff seeks, as remedies, a declaration of truth and injunctive relief that would afford Plaintiff an opportunity equal to the covid-vaccinated people to attend a law school.  Plaintiff's immutable characteristics are being used to discriminate against him.  A declaration of truth, correction of falsities, and cessation of fraud will put law schools at risk of tort for recklessly endangering students.  Vaccine mandates will end when the truth of vaccine lethality is declared.

Truth is found in EXHIBIT F, which details tens of vaccine deaths in the Commonwealth of Massachusetts ("the Commonwealth").  Defendants fraudulently certified vaccine deaths, drug overdose deaths, and blunt force trauma deaths as "covid" deaths on Death Certificates.  Express evidence in EXHIBIT F is a smidgeon of vaccine deaths covered up in the Commonwealth.  If the injunctive relief sought herein is granted, thousands of vaccine deaths in the Commonwealth alone will likely be uncovered in less than two weeks.  Plaintiff seeks access to audit existing state public health databases.  No one anywhere in the world has yet done this simple analysis.

**Many living octogenarians believe they had a heart attack because they're old, when the covid vaccine, known to cause tachycardia, myocarditis, arrhythmia, and other injuries, was the actual root cause.**  Thousands of decedents, certified as heart attack and stroke deaths, typical in the elderly, actually died from the covid vaccine, yet the truth is covered up.

In addition to vaccine cover-ups in individual records, Plaintiff also shows mathematically that ~2,700 EXCESS (more than expected) people died in the Commonwealth alone from cardiac arrest January 1, 2021 to August 15, 2022.  Many of the excess 2,700 deaths

were healthy people ages 65yo to 84yo and younger.  The frail and susceptible over 85yo already died in 2020 and were not available to die again, else actual vaccine deaths would be greater.

As a corollary, Doctors in the Commonwealth still prescribe Remdesivir, though ~1,500 EXCESS people died January 1, 2021 to August 15, 2022 with acute renal failure ("ARF").  ARF is a pandemic in its own right, yet the Commonwealth's Department of Public Health ("MA DPH") seems uninterested.  Doctors do what the FDA says.  Remdesivir is on Emergency Use Authorization.  Hospitals get large bonuses for its use.  And this is second degree murder.

Most cases in equity related to covid in the past three years turn on individual liberty balanced against the public interest.  Courts of equity are supposed to adjudicate in the interest of fairness and justice when situations arise beyond the law.  The incongruous nature of a case from 1905 should not here be used as a substantive precedent in equity.   While Plaintiff understands mandatory authority, equitable decisions of public interest and individual liberty are temporally dynamic in substance.   Anyone in, or outside, the purview of law understands that new knowledge and facts change the balance.  The vaccines were said to prevent transmission, though they never did.  And upon that falsity, courts ruled in favor of the public interest over individual liberty.  Those cases should not now be used as authority, persuasive or mandatory, in this court because transmission retardation ("TR") was always a lie based on fraudulent trials.  Given the known TR failure of these vaccines, the public interest benefit of vaccine mandates is nil, especially when balanced against the immense harm to individual liberties, *a fortiori* the actual physical harm to people.

Regarding physical harm, citizens of the Commonwealth deserve truth.  Equitable relief herein requested will bring truth to light.   Vaccination information will verify that children

rapidly degenerated and died from causes consistent with deadly covid vaccines.  Maim, though

copious and real, is omitted herein because the many deaths are sufficient to make the argument.

We The People deserve to know the vaccine dates and types of these decedents:

- 7yo Cassidy of Groton
- 15yo Preston of Newton
- 17yo Eden of Essex
- 20yo Abby of Hollis, NH died at Mass General Hospital
- 30yo Brianna of Haverhill
- 42yo Holly of Athol
- 48yo Charles of Millbury
- 11yo Ian of Bellingham
- 6yo Laney of Duxbury
- > 1,000 over-50yo died from cardiac arrest, arrhythmia, PE, stroke just after vaccines

People are dying en masse in a death lottery.  Plaintiff, this Honorable Court, and citizens

of the Commonwealth and U.S.A. are entitled to know vaccination information of decedents in

order to realize informed consent to such a deadly medical procedure as these injections.

Remedies to the injuries Plaintiff herein details comprise:  1) Declare the truth that fraud

occurred.  2) Cease the fraudulent conduct.  3) Correct the fraud.  4) Provide data transparency.

Such redress serves the public interest by:  1) plaintiff and others will have access to law

school education, 2) children, who may otherwise win the death lottery by submitting to

mandates, will be informed and, thus, reject vaccination, 3) grandparent heart victims will learn

truth and reject booster self-harm, 4) families on verge of divorce over child vaccination will

learn truth and, thus, reconcile or agree to not enter their children into the vaccine death lottery.

Plaintiff, for his Complaint for Declaratory and Injunctive relief against Charles D. Baker

*et al*, known herein as "Defendants", alleges as follows:

**PARTIES**

1.      Plaintiff, John Paul Beaudoin, Sr., is a citizen of the United States of America and of the Commonwealth of Massachusetts ("Plaintiff").   Plaintiff resides at 17 Fairview Road, Medfield, Norfolk County, Massachusetts. Plaintiff has filed, contemporaneously with this pleading and attached hereto:

- • EXHIBIT A, an affidavit in support of his claims,
- • EXHIBIT B, National Vital Statistics System ("NVSS") COVID-19 Alert No. 2 Dated March 24, 2020,
- • EXHIBIT C, NVSS Vital Statistics Reporting Guidance Report No.3 - April 2020,
- • EXHIBIT D, Plaintiff's 93A Demand Letter to MSLaw,
- • EXHIBIT E, MSLaw's 93A Response Letter to Plaintiff,
- • EXHIBIT F, individual Death Certificate records and Vaccine Adverse Event Reporting System ("VAERS") records correlated to evince fraud of omission, where vaccine was omitted as a cause of death, and commission, where COVID-19 was included as a cause of death though COVID-19 had no causal relation to the death,
- • EXHIBIT G, graphs aggregated by age group, year, and specific causes or groups of causes of death,
- • EXHIBIT H, CDC internal e-mails and a Senator Ron Johnson letter to CDC both related to VAERS, and
- • EXHIBIT I, a proposal made to states to audit two public health databases in any state to determine safety signals of death from covid vaccines.

2.      Defendant, CHARLES D. BAKER, sued individually and in his official capacity, is/was Governor of the Commonwealth of Massachusetts ("Baker"), having as his principal place of business at the Massachusetts State House, 24 Beacon Street, Office of the Governor, Room 280, Boston, Massachusetts 02133.

3.      Defendant Margaret R. Cooke, sued individually and in her official capacity, is Commissioner of the Department of Public Health of the Commonwealth of Massachusetts ("Cooke"). Defendant Cooke's office is located at the Massachusetts

Department of Public Health, 250 Washington Street, Office of the Commissioner, Boston, MA 02108.

4.      Defendant Mindy Hull, sued individually and in her official capacity, is the Chief Medical Examiner for the Commonwealth of Massachusetts ("Mindy Hull"), with an office located at 720 Albany Street, Boston, Massachusetts, 02188.

5.      Defendant Janice Y. Grivetti, sued individually and in her official capacity, is a medical examiner for the Commonwealth of Massachusetts ("Grivetti"), with an office located at 720 Albany Street, Boston, Massachusetts 02188.

6.      Defendant Michele N. Matthews, sued individually and in her official capacity, is a medical examiner for the Commonwealth of Massachusetts ("Matthews"), with an office located at 720 Albany Street, Boston, Massachusetts 02188.

7.      Defendant Robert M. Welton, sued individually and in his official capacity, is a medical examiner for the Commonwealth of Massachusetts ("Welton"), with an office located at 720 Albany Street, Boston, Massachusetts 02188.

8.      Defendant Julie Hull, sued individually and in her official capacity, is a medical examiner for the Commonwealth of Massachusetts ("Julie Hull"), with an office located at 720 Albany Street, Boston, Massachusetts 02188.

## JURISDICTION AND VENUE

9.      This action arises under 42 U.S. Code § 1983 - Civil Action for Deprivation of Rights and the First and Fourteenth Amendments of the United States Constitution.

10.     Federal question jurisdiction lies in this Court pursuant to 28 U.S.C. § 1331.

11.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(1), (2), and (3) because Defendants reside in this District, perform their official duties in this District, and a substantial part of events or omissions giving rise to this action occur or occurred in this District.

## FACTUAL ALLEGATIONS

12.     Plaintiff has a Bachelor of Science in Computer & Systems Engineering, Masters in Business Administration, and worked decades in the semiconductor R&D industry.

13.     On March 24, 2020, *COVID-19 Alert No. 2,* published by the National Vital Statistics System ("NVSS") of the Centers for Disease Control and Prevention ("CDC") detailed a new cause of death code, "U07.1" representing "COVID-19."   The excerpt below clearly states that U07.1 should only be used when COVID-19 is assumed to cause or contribute to death and not from simply a positive test upon death.  See EXHIBIT B.

> Should "COVID-19" be reported on the death certificate only with a confirmed test?
> COVID-19 should be reported on the death certificate for all decedents where the disease caused or is **assumed to have caused or contributed to death**.

14.     In April 2020, NVSS published *Report No.3 - Guidance for Certifying Deaths Due to Coronavirus Disease 2019 (COVID–19)* detailing when U07.1 "COVID-19" is to be used as a cause or contributing cause of death on death certificates.  See EXHIBIT C. Here is the "Conclusion" of the document:

> An accurate count of the number of deaths due to COVID–19 infection, which depends in part on proper death certification, is critical to ongoing public health surveillance and response. … Ideally, testing for COVID–19 should be conducted, but it is acceptable to report COVID–19 on a death certificate without this confirmation if the circumstances are compelling within a reasonable degree of certainty.

15.     In July 2020, Plaintiff was accepted into Massachusetts School of Law ("MSLaw") in the juris doctorate ("JD") program.  In May 2021, Plaintiff completed his 1L year.

16.     In June 2021, MSLaw instituted a policy of mandatory COVID-19 vaccination citing CDC and the Commonwealth vital records data as reasons for their new policy.

17.     Contemporaneous with the implementation of the COVID-19 vaccine mandate, MSLaw offered religious exemptions to students by application on MSLaw website.

18.     In and around June 2021, Plaintiff timely applied for the religious exemption. MSLaw has neither allowed nor denied Plaintiff's application for religious exemption.

19.     On August 27, 2021, prior to close of Fall 2021 registration, Plaintiff received notice from MSLaw to begin repayment of student loans.   From this notice, Plaintiff learned he had been unenrolled without notice and before close of registration.

20.     On November 15, 2021, Plaintiff sent an M.G.L. c. 93A Demand letter to MSLaw requesting relief.  See Exhibit D.

21.     On December 17, 2021, MSLaw responded to Plaintiff's 93A Demand letter, citing CDC and Johns Hopkins declarations, which are based, in part, on falsified Death Certificates from MA DPH.  See Exhibit E.

22.     On or about February 3, 2022, Plaintiff read a news report that a healthy 7-year-old girl died from COVID-19 in Groton, Massachusetts.   Knowing this to be nearly impossible, Plaintiff decided to examine the data.

23.     In February 2022, Plaintiff received a file of Death Certificates from the Commonwealth.  Of particular interest are ICD-10 codes.  CDC states that these  . . .

"codes are currently the cornerstone of classifying diseases, injuries, health encounters and inpatient procedures in morbidity settings. U.S. public health officials at the federal, state, and local level rely on the receipt of . . . coded data from HIPAA-covered entities to conduct many disease-related activities. CDC programs use [these] codes to conduct surveillance (e.g., chronic disease and injury surveillance, health care utilization, health care-associated adverse events), for case findings lists to identify cases of reportable cancers and certain birth defects and disabilities, and to provide public use data files for public analysis." https://www.cdc.gov/nchs/icd/icd10cm_pcs_background.htm

24.     In late February 2022, Plaintiff provided Joel Smalley, an independent UK analyst, with the Death Certificate file from the Commonwealth.

25.     On February 24, 2022, Joel Smalley wrote an article entitled, "*The Definitive Guide to COVID and COVID vaccine deaths.*" found here https://open.substack.com/pub/metatron/p/the-definitive-guide-to-covid-and?r=1d6m3v&utm_campaign=post&utm_medium=web   The article's addenda noted the large discrepancy among the Commonwealth's publicly purported covid deaths, the CDC's public representation of the Commonwealth's purported covid deaths, and the Death Certificate database covid-labeled deaths.

26.     On March 10, 2022, about two weeks after Joel Smalley's article was published, MA DPH published a Press Release found here https://www.mass.gov/news/department-of-public-health-updates-covid-19-death-definition in which MA DPH changed how they count covid deaths and retroactively removed a massive number of 4,081 deaths previously counted as covid deaths.

27.     On April 12, 2022, Plaintiff published "*C19 "vaccine" - the cause of causes*" found  here  https://open.substack.com/pub/coquindechien/p/c19-vaccine-the-cause-of-

causes?r=1d6m3v&utm_campaign=post&utm_medium=web which was the first in the world analysis of causes of death rate changes.   In summary, Plaintiff showed that respiratory causes dominated 2020 excess deaths, and circulatory causes dominated 2021.

28.    March 2022 to present time, Plaintiff published many ground-breaking analyses of the Commonwealth Death Certificates, many depicted in EXHIBIT G.   Specific and significant causes of death are inversely related to covid and positively related to covid vaccines.   The **symptom spectrum profiles**, **age spectrum profiles**, and **seasonality profiles** of deaths all changed starkly on the boundary between years 2020 and 2021. Deaths from heart issues, strokes, clots, and bleeds exploded beginning in January 2021.

29.    From September 2022 to present, Plaintiff presented his analyses to thousands of doctors, research scientists, lawyers, and others in podcasts, news radio and TV programs, and private zoom calls.   Few in the world have analyzed record-level source data ("RLSD") for covid as Plaintiff has.   CDC bundles data, which hides signals through Simpson's Paradox, thus researchers cannot find covid vaccine truth absent RLSD.

30.    In March, 2022, Plaintiff uncovered the Death Certificate of 7yo Cassidy Baracka of Groton, Massachusetts.   See EXHIBIT F Pages 3, 11, 18, 122.

- Age:  7 years
- Date of death:  January 18, 2022
- SFN:  5980 Year 2022
- CODIA (IMMEDIATE CAUSE):  "COMPLICATIONS OF CORONAVIRUS-19 VIRAL INFECTION"
- CONDII (Other Significant Conditions):  "FUNGAL AND BACTERIAL PLEURITIS, ASTHMA"
- ICD-10 Codes:  U07.1, B49, J45.0, R09.1

U071 "COVID-19", B49 "unspecified mycosis" ("Mycosis" is an infection caused by a fungus.), J45.0 "predominantly allergic asthma", R091 "pleurisy"[1].

Cassidy's Death Certificate does not mention covid vaccination.  Codes Y59.0 "Viral vaccines" and T88.1 "Other complications following immunization, not elsewhere classified" are not listed anywhere on Cassidy's Death Certificate.

31.     On or about March 2022, Plaintiff searched the 2022 Vaccine Adverse Event Reporting System ("VAERS") file from the U.S. Department of Health and Human Services ("HHS") website (HHS.gov) for 7-year-old females from Massachusetts who died January 2022.  Of concern was the following entry.  See EXHIBIT F Page 18.

- VAERS_ID: 2038120
- AGE:  7
- SEX:  F
- STATE:  MA
- VAX_DATE:  1/13/2022
- ONSET_DATE:  1/15/2022
- PRIOR_VAX:  "Severe nausea and vomiting from 5min post vaccination and for the next 8-10 hours
- SYMPTOM_TEXT:  "Spiked a 103 fever, severe stomachache, has not had a bowel movement since the day before vaccination, which makes 3 days without one.  First vaccine caused severe nausea and vomiting from 5minutes post injection and for the next 8-10 hours."

There is no follow-up in VAERS after the January 15, 2022 report.  Plaintiff believes the VAERS report is of Cassidy Baracka, who died January 18, 2022, three days after this VAERS report was made and five days after receipt of the covid vaccine.

32.     In June 2022, Plaintiff received updated records from MA DPH.

33.     In and around June 2022, Plaintiff attempted to obtain the Commonwealth's record of Cassidy's covid vaccination.   However, MA DPH denied the request citing

---

[1] The ICD-10 codes used by the MA DPH to identify causes of death are listed on the Public Health Information Tool section of the MA DPH website at https://www.mass.gov/service-details/icd-10-codes-used-for-phit-death-data.

privacy law as the basis for denial.  Plaintiff believes there is no legal privacy right to the vaccination date of a decedent, especially where the public interest so greatly demands.

34.     In or around March or April of 2022, upon information and belief, Plaintiff learned that Charles Casella, then 48-years-old, did not want to get the covid vaccination. His employer, Bose Corporation, informed him he must get it, else his employment would be terminated.   Upon information and belief, the day before the deadline for termination, Casella relented and obtained the covid vaccination.   The next morning, on November 16, 2021, Casella was found deceased in bed.

35.     Plaintiff located and examined Casella's Death Certificate.   See EXHIBIT F Pages 3 and 16.  Indeed, Charles Casella died on November 16, 2021.  Indeed, he was 48-years-old.  Speciously, the record indicated that he died from "COVID-19" and glaringly omitted was mention of covid vaccination within 24-hours of his death.

36.     On January 16, 2021, Solomon A. Kizitoh expired at 60-years-old.  The following information was gleaned from his Death Certificate.  See EXHIBIT F Pages 5 and 69.

- SFN_NUMBER:  11199 in the year 2021
- Medical Examiner:  Rebecca Dedrick
- CODIA/CODIB/UNITB:  "ACUTE BRONCHOPNEUMONIA AND IDIOPATHIC THROMBOCYTOPENIA FOLLOWING COVID-19 VACCINATION", "DAYS"
- CONDII:  "HYPERTENSIVE AND ATHEROSCLEROTIC CARDIOVASCULAR DISEASE"
- ICD-10 codes:  Y59.0 = "Viral vaccines", D69.6 = "Thrombocytopenia, unspecified", I11.9 = "Hypertensive heart disease without (congestive) heart failure", I25.0 = "Atherosclerotic cardiovascular disease, so described", J18.0 = "Bronchopneumonia, unspecified", and T88.1 = "Other complications following immunization, not elsewhere classified."

Solomon's is the only record in more than 420,000 records from 2015 through May of 2022 in which "Y59.0" or "T88.1" was used in a Death Certificate; ergo, the only record since 2014 to list vaccine cause ICD-10 codes that are tracked by the CDC.

37.     During 2021 and 2022, nine (9) Death Certificates, including Solomon Kizitoh's, mentioned the covid vaccine in words in the fields for causes of death or factors contributing to death.   Despite causes of death indicating covid vaccines, the ICD-10 codes Y59.0 "Viral vaccines" and T88.1 "Other complications following immunization, not elsewhere classified" were omitted from eight (8) of the nine (9) Death Certificates. See EXHIBIT F, Page 5.  The only way to find Death Certificates in which vaccination is mentioned as a cause or contributing condition of death is to read individual Death Certificates or do a string search of multiple fields, as Plaintiff did.   Some of the other causes of death listed on the eight (8) Death Certificates omitting Y59.0 and T88.1 are arrhythmia, heart failure, thrombocytopenia, hemorrhagic stroke, and Guillain Barré Syndrome.  Plaintiff noticed that all causes mentioned in narrative fields are correlated to ICD-10 code fields in all Death Certificates with the notable exceptions of the Y59.0 and T88.1 omitted from all but one single Death Certificate.  See EXHIBIT F page 5.

38.     The Commonwealth forwards Death Certificates to various federal agencies, including the CDC, for "classifying diseases, injuries, health encounters and inpatient procedures in morbidity settings. . . .and to provide public use data files for public analysis."   https://www.cdc.gov/nchs/icd/icd10cm_pcs_background.htm.   Accordingly, flawed or inaccurate data from the Commonwealth deprives federal agencies and, consequently, the public, of vital information used for the protection of public health.

Death Certificates, falsified by omission of Y59.0 or T88.1 where needed, and sent to the CDC, deprive all researchers and the public of understanding of the lethality of covid vaccines.  Covid vaccine deaths hidden from public view nullifies informed consent.

39.     These fraudulent acts of omission in the coding of the Commonwealth's Death Certificates led the CDC and the Commonwealth to misinform universities, schools, businesses and the public regarding the safety profile of these injectable biological products.  For example, Medical Examiner Julie A. Hull certified the Death Certificate of Diane Dubois.  See EXHIBIT F, Pages 5 and 72.

- SFN_NUMBER:  15403 in the year 2021
- Age:  62
- Date of Death:  March 18, 2021
- CODIA/B/C/D and CONDII fields on her Death Certificate read, "ACUTE INTRACRANIAL HEMORRHAGE IN THE SETTING OF THROMBOCYTOPENIA - IN A PERSON TREATED WITH COVID 19 VACCINATION 11 DAYS PRIOR - TO PRESENTATION", which happened in only "DAYS" before death.
- ICD-10 Codes:  D696 = "Thrombocytopenia, unspecified" and I629 = "Intracranial hemorrhage (nontraumatic), unspecified"

The ICD-10 codes are inconsistent with the fields CODIA/B/C/D and CONDII. Glaringly omitted from ICD-10 codes are:   Y59.0 "Viral vaccines" and T88.1 "Other complications following immunization, not elsewhere classified."    There is also no mention of COVID-19.   "Acute" means suddenly and not a chronic condition.  There is no mention of contributing conditions that would have been present before vaccination.

40.     Plaintiff performed thousands of hours of analysis from which he built the following causal chain of events as a real life example of felony murder.   But for the fraudulent omission of Y59.0 and T88.1 codes on the Death Certificate of Ms. Dubois, a

pause of the covid vaccine would have occurred in March 2021, and Brianna McCarthy might be alive today. Brianna was 30-years-old, died April 15, 2021 also from a massive stroke due to covid vaccination. But for the fraudulent omission of Y59.0 and T88.1 on the Death Certificates of Ms. Dubois and Ms. McCarthy, Eden MacDonald, 17-years-old, died June 11, 2021 from a "massive acute intracranial hemorrhage" after covid vaccination, might be alive today. This causal chain could fill many pages and come back around to Cassidy Baracka 7yo died more than a year after Ms. Dubois all because of fraudulent acts of omission. Brianna was coded as I64 "Stroke, not specified as haemorrhage or infarction," G935 "Compression of the brain," and U071 "COVID-19." See EXHIBIT F, Pages 3 and 13. Eden was only coded G08 "Intracranial and intraspinal phlebitis and thrombophlebitis." See EXHIBIT F, Pages 3 and 14.

41.    ICD-10 codes Y59.0 and T88.1 were omitted from the Death Certificates of Diane, Brianna, and Eden, who all were covid vaccinated hours to a few days before onset of symptoms. Several other people died from these symptoms without mention of covid vaccination. Plaintiff seeks the vaccination information of Eden, Brianna, Diane, and others with similar fates to determine the time between vaccination and stroke.

42.    Detailed in EXHIBIT F are several fraudulent misrepresentations of causes of death. Specifically, some deaths involving vaccine as a cause, per CODIA/B/C/D and CONDII, exclude Y590 "Viral vaccines" and T881 "Other complications following immunization, not elsewhere classified." Other deaths allegedly do not involve COVID-19 as a cause or contribution but do list ICD-10 code U071 "COVID-19."

43.     In January 2023, Plaintiff learned that a preliminary paper, detailing Brianna's case, and authored by six doctors affiliated with Beth Israel Deaconess Medical Center, Harvard Medical School and titled, "*Fatal Post COVID mRNA-Vaccine Associated Cerebral Thrombosis*," is different from the published paper found here https:// journals.sagepub.com/doi/full/10.1177/19418744221136898?af=R&ai=1gvoi&mi=3ricys and titled, "*Fatal Post COVID mRNA-Vaccine Associated Cerebral Ischemia*."   They seem to have lengthened the time from vaccination to death and reduced the time from covid in the prior year to date of death.   By all accounts, they knew her covid vaccine caused her stroke and death, yet local news, the Death Certificate, and the state and federal governments omit mentioning the covid vaccine as a cause of death.   Further, they censor, ban, and attack anyone who mentions that these covid vaccines are a death lottery.

44.     In 2021 and 2022, Defendant Medical Examiner Grivetti listed U071 "COVID-19" as cause of death on numerous Death Certificates including those who died from "BLUNT FORCE TRAUMA OF TORSO" occurring only "HRS" before death. This was SFN_NUMBER 352 in 2021.   Another example is SFN_NUMBER 19044 in 2021, a 68yo Male.   Cause of death is listed as U071 "COVID-19".   No other causes or contributing factors are listed.   Not pneumonia, not heart attack, not asphyxia, nothing – simply COVID-19.   People do not die of COVID-19 alone.   During 2020 – 2021, Grivetti certified many deaths as simply "COVID-19." (see EXHIBIT F, Pages 9 and 106-110)

45.     Egregiously, Grivetti also certified SFN_NUMBER 26429 in year 2020 with X42 "ACUTE FENTANYL INTOXICATION" and U071 "COVID-19."    "Acute" means reacting readily, in the near term, sharp and intense, or severe symptoms in a short time.

"Chronic" means longer term and ongoing.  If this person died from a fentanyl overdose in a short time, being minutes, then the only cause of death would rightly be "ACUTE FENTANYL INTOXICATION" _**not**_  U071 "COVID-19."   It seems Grivetti repeatedly and wrongly certified decedents with COVID-19 as a cause, though decedents merely tested SCV2 positive.  See EXHIBIT F, Pages 9 and 106-110.

46.     EXHIBITS B & C detail when U071 "COVID-19" is to be used as cause of death.

47.     Since the start of the COVID-19 pandemic in 2020, numerous fentanyl overdose deaths, blunt force trauma deaths, and covid vaccine deaths unrelated to COVID-19 disease fraudulently included U071 = "COVID-19" as a cause of death on Death Certificates.  See EXHIBIT F, Pages 6, 8, 9, 97, 98, 99, 100, 101 & many more.

48.     The Coronavirus Aid, Relief, and Economic Security Act (CARES Act), signed into law March 27, 2020, provides a complex scheme of funding to states, hospitals, and other entities for COVID-19-related patients.   Plaintiff knows and understands through 30+ years in business settings his MBA degree that pay plans define behavior.  The US Government set up the pay plan to incentivize labeling deaths with U071 "COVID-19." As an independent journalist, Plaintiff discovered that agents of the Commonwealth solicited medical examiners to include U071 "COVID-19" on Death Certificates.  This "pattern" of conduct having "taken control" across the "enterprise" of public health government and non-government organizations is contrary to the public health mission and the public interest, and was lethal to many Commonwealth citizens herein detailed.

49.     The CDC is now known to have directed the social media undermining of VAERS, while the CDC also eschewed analysis of VAERS data, even though they have primary responsibility for VAERS vigilance and analysis.  See EXHIBIT H.

50.     On December 3, 2022, Ian Shumaker of Bellingham, 11-years-old, died.   On information and belief, Ian died with clots in his heart after a booster dose of covid vaccine.   Plaintiff seeks the truth regarding Ian's death, which likely could have been averted had the relief requested in the original complaint dated August 23, 2022 been granted.  A 6-year-old Duxbury girl died since Ian.  Vaccination information is unknown.

51.     In December 2022, Plaintiff received the Vermont Death Certificate database for the same period 2015-2022.  Plaintiff found similar heart and circulatory issues beginning in 2021 and found an interesting example correlated between the Death Certificate and VAERS report.  A 98-year-old woman was covid vaccinated, her heart went to 145bpm, and she died of a heart attack 2 days later.  Few question why a 98yo woman dies from a heart attack, but they should when the heart reacts in minutes and death occurs in 2 days.

52.     Plaintiff estimates hundreds more died in the Commonwealth from the covid vaccine between the original filing August 23, 2022 and the filing of this amended complaint January 3, 2023.  Hundreds lost their lives needlessly in this delay alone.

**CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF**

**COUNT I - VIOLATIONS OF 42 U.S.C. § 1983 - CIVIL ACTION FOR DEPRIVATION OF RIGHTS AND THE FIRST AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION**
**Against All Defendants**

53.   The Plaintiff repeats and re-alleges the preceding paragraphs of this Complaint and incorporates same herein.

54.   Under 42 U.S.Code § 1983,

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, **suit in equity**, **or other proper proceeding for redress**, …,"

55.   Under Amendment XIV, Section 1 of the United States Constitution,

"… nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

56.   Under Amendment I of the United States Constitution,

"Congress shall make no law … abridging … the right of the people … to petition the Government for a redress of grievances."

57.   Actions were taken by persons.  The persons, in this case, are Defendants or their agents.   The actions surrounding falsified death certificates comprise fraud, enterprise fraud, conspiracy, coercion, solicitation, and other federal felony criminal conduct. (conduct by a person)

58.   As alleged herein, Defendants purposely falsified, concealed, or covered up material facts in writings known as Death Certificates, then certified and entered these false writings into official vital records, excerpts of which are detailed in EXHIBIT F.

59.   As alleged herein, other than in a single instance, medical examiners, in acts of omission, certified Death Certificates without mention of covid vaccines as a proximate,

actual, or contributory cause or condition leading to the death of the decedent despite knowing that covid vaccines were administered within minutes, hours, or days of the onset of symptoms, which was clearly detailed in medical reports examined by those same medical examiners.

60.     As alleged herein, medical examiners, in acts of commission, did certify that U071 "COVID-19" was a proximate, actual, or contributory cause or condition leading to the death of the decedent when they knew, or should have known, that COVID-19 had no relevant influence in the causal chain of death.  COVID-19 positivity in the decedent was irrelevant, yet listed as a cause of death purposely to derive a health-care facility financial benefit for the overall enterprise.

61.     Clearly, regarding Death Certificate evidence central to this case, Defendants acted far afield of CDC guidance for using U071 "COVID-19" (See EXHIBITS B & C)

62.     The aforementioned criminal conduct was performed under color of law in custom or usage by Defendants or their agents.   The conduct will be shown to have become a standard practice since March 2020, notwithstanding the conduct's criminality. Defendants acted in accord with the Commonwealth's and the federal government's coercions and solicitations as if they were following orders from those governmental authorities; and that comprises color of law.  (who acted under color of law)

63.     The persons' intent in committing the actions of false writings was purposeful. More importantly, Defendants and their agents knew or should have known that institutional covid vaccine mandates would flow from the false writings and, further, that

the public would rely on the false writings and endanger themselves and their charges by choosing to covid vaccinate without informed consent.  (intent)

64.     But for the fraudulent misrepresentations, Plaintiff is deprived of the right to attain a legal education at a law school that is available to all others who chose, without informed consent, to partake of covid vaccination.   Plaintiff was singled out and treated differently though he has a right to "equal protection of the laws."  (cause-in-fact)

65.     The causal chains only span two steps and three steps.  In only two steps 1) false writings in Death Certificates by Defendants or their agents comprise the Commonwealth's covid death statistics to 2) the reliance on those death statistics by MSLaw and other law schools in enacting covid vaccine mandates.  In only three steps 1) false writings by Defendants or their agents to 2) the CDC, which announced and broadcast statistics derived from those false writings and from which they recommended covid vaccine mandates to 3) MSLaw, other law schools , and other institutions that enacted covid vaccine mandates.  The causal chains are short, specific, and the results that flow from step to step are purposely or knowingly intended by the Defendants, their agents, and coconspirators.   Any reasonable person would reasonably foresee that Defendants' conduct would lead to covid vaccine mandates and that the rights of Plaintiff and the public interest would be harmed by such conduct.   Not only does the conduct proximately cause the injury, but the conduct was intended to cause the injury.    Section 1983 states, "subjects, or causes to be subjected…"  Clearly, in both two and three-step analyses, Defendants and their agents are causing Plaintiff to be subjected to the ongoing injury.  (proximate cause)

66.     Having the disability of being completely deaf in one ear since 4-years-old, and having had a deep vein thrombosis (DVT) at about 52-years-old, and having tinnitus, and having been hospitalized for severe vertigo in February 2020, all of which are strong signals from thousands of VAERS adverse event entries of these same issues, specifically after injection of the covid vaccine, Plaintiff is deprived of a legal education based upon these immutable characteristics that put him in greater danger from the covid vaccine than others matriculating at law schools.  (deprivation of a federally protected right)

67.     Plaintiff has a federally protected right under the First Amendment to the "free exercise" of his religion, which prohibits acts of self-harm.  The fact that Plaintiff knew that covid vaccines, specifically, were harmful before law school administrators, public officials, and others promoting the death lottery does not invalid Plaintiff's religious convictions to bar self-harm.  It is now known that there is no public interest benefit to the covid vaccines given that they do not retard transmission.  Thus, there is no excuse for Defendants to purposely falsify Death Certificates that led to vaccine mandates that deprived Plaintiff of his First Amendment right to exercise his religious beliefs while engaging in legal education.  This injury continues to this day based on the root cause of falsified Death Certificates.  (deprivation of a federally protected right)

68.     Plaintiff has a federally protected right under the First Amendment to "petition the Government for a redress of grievances."   Plaintiff's grievance is that the Government, which includes Defendants, is purposely, knowingly, and recklessly violating federal and state laws by falsifying numerous Death Certificates with the intention to justify downstream actions including usurping emergency powers, depriving Plaintiff and other

citizens of rights, instilling pandemic fear of a relatively mild disease into the populous, separating society into the compliant and non-compliant, and selling $BILLIONS to $TRILLIONS of vaccines.  Dismissal of this case would result in a violation of Plaintiff's First Amendment right herein detailed.  (deprivation of a federally protected right)

69.     Plaintiff has a federally protected right under the Fourteenth Amendment "… nor shall any State deprive any person of life, liberty, or property, without due process of law…"  Being under color of law from falsified data originating from Defendants for an implied or express purpose of creating just such mandates as were created, and Plaintiff having no recourse, Plaintiff was deprived of due process of law.   He was unenrolled from law school without notice just as Defendants and their agents wanted him to be.

70.     Plaintiff has a federally protected right under the Fourteenth Amendment "… nor deny to any person within its jurisdiction the equal protection of the laws."  As alleged herein, Plaintiff was treated differently based on his immutable characteristics of injuries and disabilities preventing him from safely receiving covid vaccination.  Plaintiff is not vaccinated and is, thus, being denied equal protection of 18 US Code § 1983.  Plaintiff is deprived of rights unequally.   The evidence now shows that there is no benefit to the covid vaccines relative to protecting others.  Transmission is not retarded.

71.     The falsity of the writings by the Defendants protects the perception of safety of the covid vaccines and the perception that COVID-19 is deadly to healthy people.  Whereas the evidence herein shows the opposite for both.  Plaintiff and the public interest are injured by the false writings.

72.    The Defendants did commit these acts of omission and commission, in an agreement, beyond a mere tacit understanding, among multiple people and entities, expressly or impliedly.   The co-conspirators should have known that the falsifications would carry through the enterprise of agents of the Commonwealth, the CDC, and public and private institutions, which would rely and act upon such false instruments by making coercive mandates under color of law that injure Plaintiff and the public interest.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

A.    Issue an Order enjoining Defendants to allow Plaintiff to perform an independent audit of public health records in compliance with state and federal law, including access to the Massachusetts Immunization Information System ("MIIS") and VITAL records Death Certificates, and the needed logistics so that Plaintiff may perform the covid vaccination correlation that all public health agencies in the nation have avoided performing thus far;

B.    Issue an Order enjoining Defendants to provide Plaintiff access to the Commonwealth autopsy reports, medical files, and covid vaccination records of Diane Dubois, Brianna McCarthy, Eden MacDonald, Holly Hodgdon, Charles Casella, Abigail Fitzgerald, Cassidy Baracka, Preston Settles, Ian Shumaker, Laney Ladd, and others as needed;

D.    Issue an Order enjoining all persons within the Commonwealth from administering any covid vaccine until such time as the Commissioner of MA DPH reviews the alleged vaccine-caused deaths detailed in EXHIBIT F and personally assures this court in a sworn statement that the benefits of covid vaccines outweigh the risks of maim or death;

E.      Preliminarily and permanently enjoin Defendants, their officers, officials, agents, servants, employees, and all persons acting in concert or participation with them, from continuing to engage in unlawful and fraudulent conduct as alleged herein;

F.      Enjoin the Defendants to provide Plaintiff's world-class expert witness(es) with randomly selected samples of covid vaccine vials for laboratory and genetics testing of contents;

G.      Declaratory judgment and order that Defendants must correct the Death Certificates to reflect the true and known causes of death and delete the false causes;

H.      Declaratory judgment and order that Defendants must make a public declaration and notice to all the Commonwealth's news organizations in TV, radio, newspaper, and podcasts that fraud was committed, that death counts from COVID-19 have been grossly exaggerated, and that the COVID-19 vaccine killed far more people than previously known, including children;

I.      Grant Plaintiff his attorney's fees incurred in bringing this action, to the extent authorized by 42 U.S.C. § 1983, or other law;

J.      Such other and further relief as this Court deems just and proper.


Dated: January 3, 2023                          Respectfully submitted,


                                                /s/ John Paul Beaudoin, Sr.
                                                JOHN PAUL BEAUDOIN, SR. (*pro se*)
                                                17 Fairview Road
                                                Medfield, MA 02052
                                                Mobile:  508-277-7276
                                                e-mail:   johnbeaudoinsr@gmail.com